UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| CHASE CARMEN HUNTER, | ) | |
| Plaintiff, | ) | Civil Action No. 5:15-cv-00043 |
| | ) | |
| v. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| LESLEY J. HOLSINGER, *et al.*, | ) | By:    Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

Plaintiff Chase Carmen Hunter filed this action *pro se* against Lesley J. Holsinger and

Carrie Ann Robertson ("Defendants"). Pending before the Court are Holsinger's motion to

dismiss, ECF No. 24, Robertson's motion to dismiss, ECF No. 16, and Hunter's motions to

amend the complaint, ECF Nos. 38–41. These motions are before me by referral under 28 U.S.C.

§ 636(b)(1)(B). The parties have briefed and argued the issue, and the matter is ripe for decision.

After considering the pleadings, the parties' briefs and oral arguments, and the applicable law, I

find that Hunter has failed to state a claim that entitles her to relief and that the proposed

amendment of her Complaint would be futile. I therefore recommend that the presiding district

judge grant Holsinger and Robertson's motions to dismiss and deny Hunter's motions to amend

her complaint.

I. Procedural History

On June 4, 2015, Hunter filed a Complaint alleging ten counts against Holsinger alone

and another four counts against both Defendants. ECF No. 2. Robertson and Holsinger filed

separate motions to dismiss, ECF Nos. 16, 24, and Hunter responded with briefs in opposition

that also contained many facts not within the Complaint, ECF Nos. 38, 39, 41. At oral argument

and by Order on November 25, 2015, ECF No. 55, the Court interpreted Hunter's responsive

briefs as a motion to amend her complaint and granted further briefing on the issue. Hunter filed

1

a brief in support of her motion, ECF No. 44, Robinson and Holsinger filed briefs in opposition, ECF Nos. 58, 59, and Hunter filed reply briefs in support, ECF Nos. 60, 63.

## II. Facts

For the purposes of the motions to dismiss, the Court accepts as true all of Hunter's well-pled facts and construes them in the light most favorable to her. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Holsinger is an animal control officer for the City of Staunton, Virginia, and Robertson is a dog owner within Holsinger's jurisdiction. Compl. ¶¶ 1, 22–23. On March 26, 2015, Holsinger entered into the Virginia Department of Agriculture and Consumer Services online database that Robertson's dog had bitten someone. *Id.* ¶ 4. Roughly the same time, she informed Robertson of Virginia Code § 3.2-6540(F), which requires owners of dogs that have been found dangerous to have liability insurance covering animal bites up to at least $100,000, or a surety bond of at least $100,000. *Id.* ¶ 1; *see* Va. Code Ann. § 3.2-6540(F). She told Robertson that she "must purchase 'a separate policy with only the dog on it' and that Robertson must buy this policy from 'Lester Kalmanson Agency or xinsurance' because these are the only two providers [of policies with] 'only the dog' on them." Compl. ¶ 2. Hunter states that Holsinger pressured Robertson to comply over the next two months, including calling her repeatedly, saying she would euthanize her dog, and threatening to report Robertson—who was on supervised release—to her probation officer. *Id.* ¶ 1.

In early May 2015, Hunter assisted Robertson in procuring an insurance policy to satisfy Virginia Code § 3.2-6540.[1] *Id.* ¶ 2. When Robertson presented this policy to Holsinger on May 15, Holsinger informed her that Hunter was not licensed in Virginia and was under investigation.

---

[1] The exact nature of Hunter's business was unclear in the Complaint; however, in her motion to amend, Hunter clarifies that she is "an insurance agent who helps consumers obtain liability insurance for their dogs." ECF No. 39, at 5.

2

*Id.* ¶¶ 2, 25. She said Robertson's policy was fake, not legal, and failed to satisfy the statute. *Id.* Hunter alleges that Holsinger's statements about her were false, Holsinger knew they were false, and Robertson should have known they were false. *Id.* ¶¶ 2, 25. Holsinger referred Robertson to a renter's insurance policy from Farmer's Insurance Company that she said complied with Virginia Code § 3.2-6540. *Id.* ¶ 3. Hunter alleges that Holsinger coached Robertson to lie on her application to Farmer's by denying that her dog had bitten someone. *Id.* ¶ 4.

Despite Hunter's assurance that Holsinger's statements were false, Robertson demanded a refund, ordered Hunter to charge no future installment payments, and canceled the credit card associated with her policy. *Id.* She insulted Hunter, calling her pathetic, among other things. *Id.* ¶ 25. She further "filed complaints against Hunter with Holsinger, her credit card issuer, and the Bureau of Insurance, and posted comments about Hunter on the internet." *Id.* Hunter alleges that Holsinger told Robertson how to file the complaint with the Bureau of Insurance. *Id.* ¶ 26.

Hunter derives fourteen causes of action from these events. Against Holsinger alone, she alleges: conspiracy in restraint of trade and to create a monopoly in violation of Sections 1 and 2 of the Sherman Act (Counts I and II), blackmail in violation of 18 U.S.C. § 873 (Count IV), deprivation of constitutional rights in violation of 42 U.S.C. § 1983 (Count V), conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985 (Count VI), failure to prevent a conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1986 (Count VII), accessory after the fact in violation of 18 U.S.C. § 3 (Count VIII), misprision in violation of 18 U.S.C. § 4 (Count IX), conspiracy against constitutional rights in violation of 18 U.S.C. § 241 (Count X), and deprivation of rights under the color of law in violation of 18 U.S.C. § 242 (Count XI). Against both Defendants, she alleges: a crime affecting insurance in violation of 18 U.S.C. § 1033 (Count III), common law fraud (Count XII), tortious interference with a business

3

expectancy (Count XIII), and conspiracy (Count XIV). She requests monetary damages, declaratory and injunctive relief, and attorney's fees.

Hunter premises recovery for four of her counts—Counts III, IV, X, and XI—on 18 U.S.C. § 1964(c), part of the Racketeering Influenced and Corrupt Organization Acts ("RICO"), 18 U.S.C. §§ 1961–68. In her motion to dismiss, Holsinger challenged the relevance of this statute under the facts of the Complaint. ECF No. 25, at 29–30. Hunter's responsive briefs contained a rebuttal to Holsinger's arguments and a significant amount of new facts detailing her RICO allegations. *See* ECF No. 38, at 4–32; ECF No. 39, at 5–35.[2] Both briefs end by requesting the Court "to allow Hunter to amend her complaint to include the details shown above," ECF No. 38, at 34; ECF No. 39, at 36, leading the Court to interpret these briefs as motions for leave to file an amended complaint.

In her proposed amended facts, Hunter states that she is one of only a few insurance agents who sell policies covering dangerous dogs. ECF No. 39, at 5–6. In 2009, one of her competitors in this market, Mitchel Kalmanson, sued her and others in Florida state court.[3] *Id.* at 6. Though the contours of this dispute are not clear, it eventually resulted in an April 2011 judgment against the defendants for ten million dollars. *Id.* Hunter alleges many defects with the case and judgment, including failure to effect service, forged records of hearings that never occurred, and court orders (including the final judgment) being entered by her opponents rather than a judge. *Id.* at 6–9. Hunter concludes that all court orders from this case and the judgment

---

[2] Hunter's opposition to Robertson's motion to dismiss, ECF No. 38, and her opposition to Holsinger's motion to dismiss, ECF No. 39, are largely identical in their recitation of new facts. For simplicity, the Court will cite to ECF No. 39 for all material identically presented in both motions.

[3] Hunter does not say who the other parties in the suit were, only that she was one of the defendants. ECF No. 39, at 9.

4

against her are "fraudulent" and not legally binding.[4] *Id.* at 6, 11. Hunter's attempts to challenge the judgment on direct appeal and with additional suits in Florida have been unsuccessful. *Id.*

In 2012, Kalmanson began attempting to collect on his judgment in multiple states, including Virginia.[5] *Id.* at 11–17, 22–23. Hunter challenged the judgment and Virginia collection efforts in Virginia state court and the United States District Court for the Eastern District of Virginia, but was not successful. *Id.* at 11–14. In January 2015, a Virginia judge ordered Hunter's property in Chesterfield County sold to satisfy the Florida judgment. *Id.* at 15–16. The locks on her property were changed, and Hunter has lost the rental income from that property. *Id.* at 16. Collection efforts have also resulted in multiple orders for Hunter's arrest, *id.* at 12–14, 19, 22–23, and two periods of imprisonment in Virginia for eight days each in 2012, *id.* at 12, 22–23. Hunter calls these arrests "kidnapping" performed "in cooperation with the criminal conspiracy arising from Florida." *Id.* at 14.

In October 2014, the Virginia Bureau of Insurance ("VBI") initiated an investigation into Hunter's business.[6] *Id.* at 14. The pleadings do not provide much detail on the proceedings, but it appears that the VBI took issue with Hunter's website, *id.* at 19, and that they wrangled over production of documents, *id.* at 20. Concerning the documents, Hunter states both that the VBI

---

[4] Though this is a legal conclusion and need not be taken as true by the Court, Hunter's reasoning on this point is important to understanding her perspective and subsequent claims.

[5] Hunter "once lived in Virginia," ECF No. 39, at 13, and as of January 2015 still owned rental property in Chesterfield County, *id.* at 16. Her complaint does not provide her current residence, instead stating she "is a citizen of the United States of America and not a resident of Virginia, during all times relevant," Compl. ¶ 21, though she also states elsewhere that her state of residence is Massachusetts, ECF No. 39, at 33, and she mailed her Complaint from an address in California, ECF No. 2-1.

[6] Through a request under the North Carolina Freedom of Information Act, Hunter received emails between the North Carolina Department of Insurance ("NCDI") and the VBI. ECF No. 39, at 14–15. A September 11, 2014, email from an NCDI employee suggests to a VBI employee that the VBI take action against Hunter in an attempt to "corral" her. *Id.*

5

"never alleged that Hunter had [or] was required to have" the requested documents and that she actually did respond to the request. *Id.* Nevertheless, the VBI threatened to fine her for failure to produce documents. *Id.* The proceeding ended with the VBI revoking Hunter's license, allegedly solely for Hunter's failure to produce the requested documents. *Id.* at 21. Hunter pleads multiple procedural defects with the VBI's process, especially the handling of her second administrative hearing, and consequently labels the order revoking her license "void." *Id.* at 21. Hunter reports that administrative action has also been taken against her by the Florida Department of Financial Services and the Texas Department of Insurance.[7] *Id.* at 17–18.

Hunter responded to Kalmanson's collection efforts and the VBI's actions with numerous additional lawsuits. She filed a petition with the Virginia Supreme Court alleging that Virginia judges violated state law in their attempts to enforce the Florida judgment. *Id.* at 20. The Virginia Supreme Court denied her request for a fee waiver, and Hunter did not pursue the petition further. *Id.* at 19–20. Hunter filed a federal suit and a petition with the Virginia Supreme Court challenging the VBI's authority to interfere with her business. *Id.* at 19. After the VBI's revocation of her license, she lodged an appeal with the Virginia Supreme Court and moved for recusal of every Justice due to allegedly rampant fraud and deceit by Virginia judges. *Id.* at 21–22. By Hunter's own account, none of these suits have resulted in overturning the Florida judgment, halting the efforts to collect on that judgment, or overturning the VBI's revocation of her Virginia license. *Id.* at 19–22.

---

[7] Hunter states that the "record in the [VBI] administrative hearing proves that the [VBI] sought to revoke Hunter's license so that it could cause each of Hunter's non-resident state insurance licenses to be terminated." ECF No. 39, at 22.

6

With this background established, Hunter moves on to describe the events underlying the instant suit in greater detail.[8] Robertson first contacted Hunter on May 4, 2015, for help procuring an insurance policy for her dog. *Id.* at 24. In a May 7 email to Hunter, Robertson stated that her dog "must be on a policy of his own [for] 100,000." *Id.* at 25. Robertson also stated in emails to Hunter that "the dog warden had been calling me non stop [sic]," *id.* at 28 (May 13 email), and "I need [the policy] number or our dig [sic] will be taken," *id.* (May 12 email). On May 12, Hunter charged Robertson's credit card for an insurance policy and emailed a copy of the receipt to Robertson. *Id.* at 25. Robertson forwarded her policy information to Holsinger the same day. *Id.*

On May 13, Holsinger received an email from Shane Ayers, another Staunton police officer, that stated "Bill called the other day and said that [Hunter] was not licensed to do insurance in Virginia." *Id.* at 24. Hunter identifies Bill as William Stanton, an employee of the VBI and Virginia State Corporation Commission. *Id.* In either the same email or another email on May 13, Ayers also told Holsinger "you might let [Robertson] know that we approved insurance from PRIME (on-line) and Farmers Insurance." *Id.* at 27. Hunter relates later that "Public records Hunter obtained from the Virginia Department of Agriculture and Consumer Services in May 2015 show that all other dog owners in Holsinger's jurisdiction met Holsinger's demand for insurance with PRIME contracts which are a 'separate policy with only the dog on it.'" *Id.* at 34.

Robertson emailed Hunter on May 15, stating that she had discovered Hunter was not licensed in Virginia, the "dog warden could not accept your fake policy and is actually working

---

[8] The additional detail comes largely from emails between Robertson and Hunter and documents procured under the Virginia Freedom of Information Act ("VFOIA") from the Staunton Police Department. *See* ECF No. 39, at 31 (describing the VFOIA request).

with an investigator," Hunter did not have permission to access money from her account, she had canceled her card, and she demanded a refund. *Id.* at 28–29. Hunter told Robertson that she had been given incorrect information and that the her insurance policy was valid. *Id.* at 29. In a May 18 email, Robertson informed Hunter that she "had to get a new insurance policy, a legal one, and actually the dog warden sent me to this company." *Id.* Robertson again demanded a refund and stated "your [sic] so pathetic you don't even have a real phone number for your clients to call." *Id.* at 29. Robertson forwarded her correspondence with Hunter thus far to Holsinger on May 19. *Id.* at 32.

Robertson was aware of the instant suit against her and Holsinger by May 25, 2015. *Id.* at 30. By email to Hunter that day, she disputed Hunter's claim that she lied on her Farmer's Insurance application, stating she had correctly indicated that she had "never had to file an insurance claim for her dog biting anyone." *Id.* On May 26, Robertson sent Hunter an email with an attached document that she describes as the letter Holsinger received from the VBI that led her to deny the policy Hunter helped Robertson procure. *Id.* at 31. Hunter describes the attachment as "a generic-looking document of no known source . . . [which] appeared to be a 'case summary' of the [VBI's] insurance administrative action against Hunter." *Id.* Hunter's VFOIA request did not discover an email from the Staunton Police Department to Robertson with this document attached. *Id.*

Robertson also emailed Holsinger on May 26. She wrote that she had received a copy of the Complaint against them and that it was "packed with lies," including Hunter "saying you threatened me and coerced me into a bunch of stuff which is all untrue." *Id.* at 32. Robertson said that she would send Holsinger all email between her and Hunter that she had not already provided and requested that Holsinger call her. *Id.* Hunter concludes from these facts that

8

participants in the RICO conspiracy originating from Florida solicited the Defendants' participation and the Defendants willfully joined in the RICO conspiracy against Hunter. *Id.* at 24, 32–33.

Hunter's brief also addresses some issues that are less directly tied to the narrative underlying her causes of action. Hunter expands upon her request in the Complaint for "a conclusive declaratory judgment clarifying the legal relations of the parties," Compl. ¶ 13, by listing four specific questions that she contends are real and imminent disputes ripe for declaratory judgment. ECF No. 39, at 2. She also reiterates her arguments that Virginia Code §§ 3.2-6540(F) and 38.2-2128 violate federal law regarding interstate commerce, *id.* at 23, and states that the National Association of Insurance Commissioners "functions in violation of federal law because it actively regulates interstate commerce," *id.* at 24.

## II. Standards of Review

*A.    Motions to Dismiss*

A complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). In making this determination, the court accepts as true all well-pled facts and construes those facts in the light most favorable to the plaintiff. *Philips*, 572 F.3d at 180. The court need not accept "legal conclusions, formulaic recitation of the elements of a cause of action, or bare assertions devoid of further factual enhancements," however, as those are not well-pled facts for Rule 12(b)(6)'s purposes. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Plaintiffs must plead enough facts to "nudge[] their claims across the line from conceivable to plausible," and the court should dismiss a complaint that is not "plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Federal courts have an obligation to construe *pro se* pleadings liberally, so that any potentially valid claim can be fairly decided on its merits rather than the *pro se* litigant's legal acumen. *Rankin v. Appalachian Power Co.*, No. 6:14cv47, 2015 WL 412850, at *1 (W.D. Va. Jan. 30, 2015) (citing *Boag v. MacDougall,* 454 U.S. 364, 365 (1982)). Still, "a *pro se* plaintiff must . . . allege facts that state a cause of action, and district courts are not required 'to conjure up questions never squarely presented to them.'" *Considder v. Medicare*, No. 3:09cv49, 2009 WL 9052195, at *1 (W.D. Va. Aug. 3, 2009) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)), *aff'd*, 373 F. App'x 341 (4th Cir. 2010).

B.    *Motions to Amend*

A plaintiff may amend her complaint once as a matter of course within 21 days after serving it, or 21 days after service of a responsive pleading or service of a motion to dismiss under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A)–(B). Once this window has elapsed, the plaintiff may only amend with the opposing party's written consent or the court's leave. *Id.* at 15(a)(2). Leave to amend a complaint should be freely granted when justice so requires. *Id.* The court should deny leave "only where good reason exists," *Franks v. Ross*, 313 F.3d 184, 189 n.15 (4th Cir. 2002), such as when amending would be futile, *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). A proposed amendment "may properly be found futile where, as a matter of law, it fails to state a claim" against the putative defendant. *Cominelli v. Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 712 (W.D. Va. 2008).

10

III. Discussion

The essential facts of this case are simple. The VBI revoked Hunter's license to transact insurance in Virginia. Hunter thereafter brokered an insurance policy on behalf of Robertson. Holsinger, in her duties as a police officer, informed Robertson of Hunter's revoked license and inability to transact insurance in Virginia. Robertson attempted to recover her money and reported Hunter's conduct. From that interaction, Hunter brings this suit against the Defendants alleging a scattershot of civil and criminal infractions. As the following discussion demonstrates, neither the Complaint nor Hunter's proposed amendments state a claim under the law.

A.    *Amendment as a Matter of Course*

As an initial matter, Hunter argues that she should be able to amend her Complaint as a matter of course under Rule 15(a)(1) of the Federal Rules of Civil Procedure. The first responsive pleading to Hunter's Complaint was Robertson's motion to dismiss under Rule 12(b)(6), which was served on July 27, 2015, by mail pursuant to Rule 5(b)(2)(C). ECF No. 16, at 10. Hunter's right to amend as a matter of course thus lapsed on August 20, 2015, six days before Hunter filed for an extension of time to respond, ECF No. 29, and 25 days before her first response and motion to amend on September 14, 2015. *See* ECF No. 38; *see also* Fed. R. Civ. P. 6(d) (adding three days for mailed service). Hunter argues that her date to amend as a matter of course should be calculated from the *Roseboro* notice she received and, further, that the date to amend each count should be based upon the individual motion that sought to dismiss that count and its corresponding *Roseboro* notice—i.e., as Robertson's motion only sought dismissal of the counts alleged against her, it should only trigger the countdown to amend those counts, not the whole Complaint. *See* ECF No. 60, at 1–9; ECF No. 63, at 3–4.

11

The date by which a party must respond to a motion is set by the Local Rules at 14 days after service of the motion, unless otherwise directed by the Court. W.D. Va. Local Rule 11(c)(1). The Court's *Roseboro* notice concerning Robertson's motion to dismiss modified this deadline by allowing Hunter 21 days from its issuance to respond. ECF No. 18. At Hunter's request, the Court granted an additional 10-day extension to file a response to Robertson's and Holsinger's motions. ECF No. 30. A party's date to amend as a matter of course, on the other hand, is set by the Federal Rules at 21 days from service of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). Neither the Court's *Roseboro* notice nor its subsequent extension changed this deadline.

A *Roseboro* notice acts to ensure that a *pro se* plaintiff does not lose a dispositive motion because she is not aware of her obligation to respond. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975); s*ee also Proctor v. Morrissey*, No. 95-1937, 1996 WL 555302, at *4 (4th Cir. Oct. 1, 1996) (stating that *Roseboro* concerns "[t]he entitlement of pro se litigants to specific notice of the pendency of proceedings in which dispositive action may be taken"). As with other concessions to *pro se* litigants, it encourages resolution of claims on their merits, rather than legal technicalities. *Cf. Rankin*, 2015 WL 412850, at *1 (discussing how courts construe *pro se* pleadings liberally). Nothing in the Fourth Circuit's opinion or this Court's *Roseboro* Notice extends the protections provided in that notice to Rule 15. That the *Roseboro* notice did not toll the deadline for Hunter's amendment as a matter of right means only that her proposed amended complaint will be evaluated on its merits, rather than granted automatically. This result is consistent with the federal rules and the holding in *Roseboro*.

Concerning Hunter's second argument, the rules are clear that the filing of any responsive pleading or motion triggers the deadline for amendment of the entire complaint. Thus, "if only

12

some defendants file responsive pleadings, plaintiff still should be governed by the 21-day amendment period in Rule 15(a)(1)(A) for pleading amendments regarding the nonresponding defendants." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1481 (3d ed. 2015), Westlaw; *see* Fed. R. Civ. P. 15(a) advisory committee's note to 2009 amendment ("The 21-day period to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative."). Further, even if the deadline to amend as a matter of course were calculated from the filing of Holsinger's motion, it would have elapsed three days prior to Hunter's first response in opposition and motion to amend. The Court will thus evaluate Hunter's proposed amendments under Rule 15(a)(2).[9]

B. *RICO Allegations*

Hunter states repeatedly that the Court must read her pleadings liberally because she is proceeding *pro se*. *See, e.g.*, ECF No. 60, at 6, 10, 17–18; ECF No. 63, at 5. While she is correct about this principle, she misunderstands its application. A Court is obliged to read a *pro se* litigant's *pleadings* liberally, such as overlooking a procedural error or failure to plead the exact cause of action called for by her facts, in order to "allow for the development of a potentially meritorious claim." *Rankin*, 2015 WL 412850, at *1. The Court should not, and indeed cannot, read the *law* liberally and change the elements of a cause of action so that the facts a *pro se* litigant presents state a claim. The Court will search for a meritorious claim in *pro se* pleadings, but cannot create a claim from those pleadings that does not exist in the law. Hunter repeatedly requests the Court do the latter.

---

[9] Hunter argues that her motions to amend should be considered motions to supplement. ECF No. 60, at 6–9. Although most of the events alleged in her filings are not new, some occurred after she filed the Complaint. The standards for evaluating a motion to amend under Rule 15(a) and a motion to supplement under Rule 15(d), however, are nearly identical. *See Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001).

13

For example, Hunter requests recovery on four of her Counts through 18 U.S.C. §
1964(c), part of the RICO Act, which only grants relief if there is an underlying violation of 18
U.S.C. § 1962. Hunter does not plead a violation of § 1962 in her Complaint. Her proposed
amended complaint contains thirty pages of allegations devoted to describing "the RICO details"
behind this litigation, ECF No. 39, at 5–35, culminating with block quotes of 18 U.S.C. §
1962(b)–(d), *id.* 34. Nonetheless, Hunter insists that her proposed amendment does not add any
new claims, but only supplements the claims already in her Complaint. ECF No. 60, at 6. Rather
than dismissing all RICO allegations and requests under § 1964(c) for failure to plead a
corresponding claim under § 1962, the Court will liberally construe Hunter's pleadings and
evaluate her RICO allegations on the merits.

Section 1964(c) allows "any person injured in his business or property by reason of a
violation of section 1962" to bring a civil suit for recovery of threefold damages sustained, plus
costs and attorney's fees. 18 U.S.C. § 1964(c). Violation of § 1962 requires that a defendant
participate in "a pattern of racketeering activity" or "collection of unlawful debt," which involves
an enterprise engaged in commerce. 18 U.S.C. § 1962(a)–(c). "Racketeering activity" is "any act
or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in
obscene matter, or dealing in a controlled substance or listed chemical."[10] *Id.* § 1961(1).
"Unlawful debt" is a debt incurred from illegal gambling activity or unlawful usury. *Id.* §
1961(6).

Hunter describes the Florida judgment rendered against her as "fraudulent," *see, e.g.*,
ECF No. 39, at 7, 11, and alleges many defects with the underlying case and court procedure, *id.*
at 7–8. These are conclusory allegations that the Court need not and does not credit. Moreover,

--------

[10] The definition also includes a long list of statutes whose violation counts as racketeering
activity, none of which Hunter alleges or her pleadings implicate.

nothing in these allegations involves illegal gambling or usury, as required to qualify as an "unlawful debt" under the RICO statutes. Hunter's proposed additional facts also relate that the judgment has not been overturned despite her appeals and collateral attacks. *See id.* at 6, 11, 19–20. The Full Faith and Credit Clause of the Constitution, U.S. Const. art. IV, § 1, and federal statute, 28 U.S.C. § 1738, mandate that "the judgment of a state court should have the same credit, validity, and effect, in every other court in the United States, which it had in the state where it was pronounced." *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 270 (1980) (quotation omitted). Virginia expressly allows a foreign judgment creditor to either bring an action to enforce his judgment, Va. Code Ann. § 8.01-465.5, or to follow a codified procedure for the domestication and collection of foreign judgments, *id.* § 8.01-465.1 to -465.4. Unless and until the Florida judgment is adjudicated invalid, courts in Virginia and throughout the country are bound to aid in its collection.

As to "racketeering activity," Hunter describes her two eight-day periods of imprisonment as "kidnapping," *id.* at 14, and the orders for her arrest as "attempted kidnapping," *id.* at 12–14, 19, 22–23. Kidnapping requires an unlawful seizure or detention. 18 U.S.C. § 1201; Va Code Ann. § 18.2-47. Hunter does not provide detail on the circumstances of her detention, but does appear to contest the validity of the warrants behind her arrests. *See* ECF No. 39, at 12–14, 19, 22–23. Improper arrest by state officials pursuant to a warrant does not state a claim for kidnapping, but rather implicates malicious prosecution, which is not defined as "racketeering activity" under the RICO act.

The law must contend with the limited number of words in the English language, and therefore grants words and phrases specific definitions for use in certain contexts, such as RICO violations. Hunter believes the judgment against her was reached in violation of the law, and

therefore considers it an unlawful debt. Even taking this conclusion as true, the judgment still does not fit the specific definition of "unlawful debt" set out by the RICO Act and to which its penalties apply. The same is true for Hunter's allegations of "racketeering activity." Furthermore, Hunter's speculative allegations attempting to link the Defendants to a commercial enterprise are unsupported and simply not plausible. Though the Court must liberally construe Hunter's pleadings, she must nonetheless provide sufficient facts to state a plausible claim. The Court cannot distort the meaning of the RICO statutes so that they match Hunter's allegations.

Neither the Complaint nor the proposed additional facts describe an "unlawful debt" or "racketeering activity" as defined by 18 U.S.C. § 1961 or a commercial enterprise. Nor do they show that Hunter may be able to allege such facts. The portions of Hunter's Complaint requesting relief for RICO violations should therefore be dismissed with prejudice and her motion to amend the complaint to add a RICO claim or facts describing the alleged RICO conspiracy denied as futile.

C.      *Claims Brought Under Criminal Statutes: Counts III, IV, VIII, IX, X, and XI*

Hunter brings five counts against Holsinger and one count against both Defendants alleging violation of various criminal statutes. Federal criminal statutes are enforced through actions brought by the United States Attorney, 28 U.S.C. § 547; Fed. R. Crim. P. 7, and "[a] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64–65 (1986). "A private right of action to enforce a federal law can only be established by Congress, and the judicial duty is only to interpret the statute." *Reinheimer v. Moynihan*, No. 5:14cv49, 2015 WL 3507328, at *8 (W.D. Va. May 1, 2015) (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578 (1979)), *report and recommendation adopted in relevant part,* No. 5:14cv49, 2015 WL 3513765 (W.D. Va. June 4,

2015). Therefore, absent clear Supreme Court guidance, a plaintiff cannot bring a civil claim for violation of a criminal statute. *Id.* (citing *Cannon v. University of Chicago,* 441 U.S. 677, 668 (1979)).

District courts have already found that the exact statutes Hunter attempts to enforce do not provide a provide right of action. *See Granier v. Ladd*, No. 5:14cv5372, 2015 WL 5676021, at *8 (N.D. Cal. Sept. 28, 2015) (dismissing claim for violation of 18 U.S.C. § 873 and others brought under Title 18 because "[f]ederal criminal statutes do not provide a basis for civil liability."); *Bardes v. Massachusetts Mut. Life Ins. Co.*, No. 1:11cv340, 2011 WL 1790816, at *3 (M.D.N.C. May 10, 2011) ("Section 1034 allows only the United States Attorney General (and, thus, by clear implication, not private plaintiffs) to seek civil penalties and injunctions for violations of the criminal prohibitions in Section 1033."); *Cominsky v. FBI*, No. 1:07cv1261, 2007 WL 2206606, at *3 (N.D. Oh. May 29, 2007) ("Title 18 U.S.C. §§ 241, 242 and 18 U.S.C. §§ 3, 4 are criminal statutes. They provide no private right of action.").

Nothing that Hunter has pled or could plead would change the legal impossibility of recovery on these claims. Hunter's Counts III, IV, VIII, IX, X, and XI should be dismissed with prejudice and any amendment related to those counts denied.

D.      *Antitrust Claims: Counts I and II*

Hunter brings antitrust claims against Holsinger alone, alleging in Count I that she violated 15 U.S.C. § 1 and in Count II that she violated 15 U.S.C. § 2. Hunter may bring a private cause of action under 15 U.S.C. § 15, which requires a plaintiff to demonstrate that the defendant violated antitrust statutes and that violation caused an injury to the plaintiff's business or property.

17

Hunter argues that Holsinger engaged in two anticompetitive acts: she initially told Robertson that she had to have a separate policy with only the dog on it to satisfy the Virginia statute, then rejected the policy Hunter helped Robertson procure and insisted that Robertson get one of two policies she recommended. Compl. ¶ 2; ECF No. 39, at 25, 29. Hunter concludes that Holsinger has conspired with VBI employees and other Stanton police officers to "restrict the insurance options for dog owners to just two providers in the entire United States of America," thereby impairing Hunter's ability to sell insurance in the Virginia market. ECF No. 39, at 27–28; *see also* ECF No. 60, at 20.

"The courts have long held that the federal antitrust laws apply primarily to private activity, and they do 'not apply to anticompetitive restraints imposed by the States as an act of government.'" *Fisichelli v. City Known as Town of Methuen*, 956 F.2d 12, 14 (1st Cir. 1992) (Breyer, C.J.) (quoting *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 372 (1991)). As a municipal employee, Holsinger is potentially entitled to immunity for her actions under the Local Government Antitrust Act, 15 U.S.C. §§ 34–36, and the state action doctrine, *see Parker v. Brown*, 317 U.S. 341 (1943) (establishing the doctrine); *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389 (1978) (applying *Parker* to municipalities). The Fourth Circuit instructs courts "to resolve the immunity issues as early as possible, with a minimum of expense and time to the parties." *Sandcrest Outpatient Serv. v. Cumberland Cty. Hosp.*, 853 F.2d 1139, 1148 n.9 (4th Cir. 1998) (Powell, J. (Ret.), sitting by designation). The Court will address the state action doctrine first, as it provides immunity from damages and injunctions, while 15 U.S.C. § 35 concerns only damages. *Command Force Sec., Inc. v. City of Portsmouth*, 968 F. Supp. 1069, 1071–72 (E.D. Va. 1997).

18

The state action doctrine recognizes "that federal antitrust laws are not intended to prohibit States from imposing restraints on competition; thus, a State itself is absolutely immune from antitrust actions, both for money damages and for injunctive relief." *Id.* at 1072 (citing *Parker*, 317 U.S. 341). A locality and its employees receive this same protection if they act in their official capacity pursuant to "an authorized implementation of state policy." *Columbia*, 499 U.S. at 371. The Supreme Court has emphasized that authorization is defined broadly for *Parker* immunity, asking only if the allegedly anticompetitive conduct is a "foreseeable result" of a clearly articulated state policy. *Id.* at 373–74. Authorization is broader even than legality; if the action is objectively authorized, the court does not look for substantive or procedural defects that may make the action illegal.[11] *Id.* at 370–73. Importantly, even allegations of bribery or conspiracy do not remove immunity if the action is authorized. *Id.* at 379 ("[W]e reaffirm our rejection of any interpretation of the Sherman Act that would allow plaintiffs to look behind the actions of state sovereigns to base their claims on 'perceived conspiracies to restrain trade.'"

_____

[11] The Court's conclusion is grounded in principles of federalism:

> "To be sure, state law 'authorizes' only agency decisions that are substantively and procedurally correct. Errors of fact, law, or judgment by the agency are not 'authorized.' Erroneous acts or decisions are subject to reversal by superior tribunals because unauthorized. If the antitrust court demands unqualified 'authority' in this sense, it inevitably becomes the standard reviewer not only of federal agency activity but also of state and local activity whenever it is alleged that the governmental body, though possessing the power to engage in the challenged conduct, has actually exercised its power in a manner not authorized by state law."
> . . .
> We agree with that assessment, and believe that in order to prevent *Parker* from undermining the very interests of federalism it is designed to protect, it is necessary to adopt a concept of authority broader than what is applied to determine the legality of the municipality's action under state law.

*Columbia,*, 499 U.S. at 371–72 (quoting P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 212.3b (Supp. 1989)).

19

(quoting *Hoover v. Ronwin*, 466 U.S. 558, 580 (1984))); *see also Fisichelli*, 956 F.2d at 14 ("[I]n applying the '*Parker* immunity' doctrine, the courts should recognize no exception for 'conspiracy,' 'bribery,' or similar activity." (quoting *Colombia*, 499 U.S. at 379)).

Hunter contends that Holsinger exceeded any authorization by "giving insurance advice, giving legal advice, and telling insurance consumers from whom they must buy their insurance." ECF No. 39, at 3; *see also id.* at 28. She also argues that even if Holsinger is entitled to immunity in her official capacity, she is still liable in her individual capacity. ECF No. 63, at 2–3; *see Command Force Serv.*, 968 F. Supp. at 1074 ("[B]oth the State Action Doctrine and the LGAA protect these officials only when they are acting in an 'official capacity,' as opposed to their individual capacities.").

Virginia has a clearly articulated policy in Virginia Code § 3.2-6540(F) that all owners of dangerous dogs must have insurance coverage. Enforcement of this law, like others, is delegated to local municipalities such as the City of Staunton and its police officers such as Holsinger. *See* Va. Code Ann. § 15.2-1704. Hunter objects to Holsinger's classification of which insurance policies satisfy the statutory requirement and which do not. Animal control officers deciding whether an insurance policy satisfies the statute is not only a foreseeable result of Virginia Code § 3.2-6540(F), but necessary to its enforcement. Thus, Holsinger's alleged anticompetitive actions were authorized by a clearly articulated state policy. Hunter's allegations that Holsinger misunderstood the statute or abused her authority have no bearing on her entitlement to immunity as a municipal employee. *See Columbia*, 499 U.S. at 379; *Fisichelli*, 956 F.2d at 14; *Allright Colorado, Inc. v. City & Cty. of Denver*, 937 F.2d 1502, 1511 (10th Cir. 1991) ("[W]e reject the argument that alleged errors or abuses in the implementation of state law should expose the City to antitrust liability."); *Boone v. Redevelopment Agency of City of San Jose*, 841

20

F.2d 886, 892 (9th Cir. 1988) ("[C]oncerns over federalism and state sovereignty . . . dictate that the [plaintiffs] not be allowed to use federal antitrust law to remedy their claim that the city and the agency exceeded their authority under state law."), *cert. denied* 488 U.S. 965 (1988).

Additionally, though immunity attaches only to actions taken in an official capacity, Hunter does not allege any anticompetitive actions by Holsinger beyond her interactions with Robertson regarding the standards of Virginia Code § 3.2-6540(F). These acts concern the epitome of Holsinger's official duties—an animal control officer requiring a dog owner to comply with state law—for which she, just like a municipality, enjoys immunity. *See Fisichelli*, 956 F.2d at 15–16 (discussing state action doctrine); *Command Force Sec.*, 968 F. Supp. at 1072 (citing *Sandcrest*, 853 F.2d at 1142 (discussing Local Government Antitrust Act)). By way of contrast, when the court in *Command Force Security* found that the plaintiffs could potentially state an antitrust claim against police officers in their individual capacities, those officers were engaged in off-duty security work and were being sued for anticompetitive actions in the private security market they shared with the plaintiffs. 968 F. Supp. at 1071, 1074–75. Hunter does not allege that Holsinger participates in the insurance market or that she has taken any actions outside of her role as an animal control officer; instead, her complaints involve Holsinger's interpretation and application of the law. These actions are part of Holsinger's official duties and are covered by state action immunity.[12]

---

[12] Besides Holsinger's immunity, Hunter's antitrust counts have otherwise fatal substantive flaws. Hunter cannot demonstrate, as required by 15 U.S.C. § 15, that Holsinger's alleged antitrust violations caused an injury to her business or property. The VBI revoked Hunter's license before she dealt with Robertson, rendering their business relationship invalid and foreclosing her potential for future Virginia insurance sales. *See* Section III.G, *infra*. Concerning 15 U.S.C. § 1, Hunter does not demonstrate concerted action between Holsinger and any other party as necessary to state a claim for conspiracy, *see* Section III.E, *infra*, and with regard to 15 U.S.C. § 2, Hunter does not allege that Holsinger or anyone she interacted with is a participant in the insurance market, much less one who holds monopoly power. *See Estate Const. Co. v. Miller*

Holsinger is entitled to immunity from monetary and injunctive relief under the state action doctrine and thus analysis of the Local Government Antitrust Act is unnecessary. Nothing in Hunter's proposed amended facts affects Holsinger's immunity. Counts I and II of the Complaint should be dismissed with prejudice and the motion to amend related to those Counts rejected.

E.    *Title 42 Claims: Counts V, VI, VII*

Hunter alleges violation of three civil rights statutes against Holsinger alone. As discussed below, Hunter does not and cannot state a claim under Title 42. Counts V, VI, and VII should be dismissed with prejudice and any amendments directed to those Counts denied as futile.

1.    *42 U.S.C. § 1983*

Count V alleges that Hunter is a victim of Holsinger's actions under 42 U.S.C. § 1983. Compl. ¶ 46. Section 1983 creates a civil cause of action against a state actor for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The statute itself does not confer a substantive right, but rather provides an avenue in federal court to redress other rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Every § 1983 claim therefore requires a separate underlying violation of the Constitution or federal law. As demonstrated in the previous sections, Hunter's pleadings do not state a claim under the RICO statutes, Holsinger is completely immune to the alleged antitrust violations, and the criminal statutes cited in the Complaint do not confer a private right of action under § 1983 or otherwise.

---

*& Smith Holding Co.*, 14 F.3d 213, 220 (4th Cir. 1994) (elements of conspiracy in restraint of trade); *Cavalier Tel., LLC. v. Verizon Virginia, Inc.*, 330 F.3d 176, 183 (4th Cir. 2003) (elements of monopolization).

22

Hunter thus has not pled a violation of the Constitution or federal law upon which to base a § 1983 claim.[13]

## 2. *42 U.S.C. § 1985*

Count VI alleges conspiracy in violation of § 1985, but does not specify which subsection Holsinger is alleged to have violated. "Section 1985(1) prohibits interfering with federal officials in the performance of their duties." *Shooting Point, L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 739 (E.D. Va. 2002), *aff'd,* 368 F.3d 379 (4th Cir. 2004). Hunter does not allege that Holsinger has interfered with any federal officials. Section 1985(2) prohibits obstructing justice in federal or state court, especially intimidating witnesses. *Id.*; s*ee Haddle v. Garrison,* 525 U.S. 121, 125 (1998) ("The gist of the wrong at which § 1985(2) is directed is . . . [the] intimidation or retaliation against witnesses in federal-court proceedings."). Though Hunter discusses many court proceedings in her proposed amended facts, she does not allege Holsinger's involvement in any of them; indeed, they mostly precede Holsinger's actions in May 2015 that underlie the Complaint.

"Finally, section 1985(3) prohibits conspiracies to deprive persons of the equal protection of the law." *Shooting Point, L.L.C.*, 238 F. Supp. 2d at 739 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). Enacted as part of the Civil Rights Act of 1871, the statute was designed to combat racial discrimination. *See United Bhd. of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 836–37 (1983). Though the statute is not confined only to racial concerns, a violation of § 1985(3) requires a plaintiff to "demonstrate with specific facts that the defendants were 'motivated by a specific class-based, invidiously discriminatory animus to [ ]

---

[13] Hunter states at various times in her pleadings that Virginia Code §§ 3.2-6540(F) and 38.2-2128 are unconstitutional, but she does not bring an explicit constitutional claim or provide sufficient argument for the Court to infer one. *See* Compl. ¶ 1, 11–13; ECF No. 39, at 2–3, 23.

deprive the plaintiff[s] of the equal enjoyment of rights secured by the law to all.'" *Francis v. Giacomelli*, 588 F.3d 186, 196–97 (4th Cir. 2009) (alterations in original) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). "[T]he intended victims must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class." *United Bhd. of Carpenters*, 463 U.S. at 850–51 (1983) (Blackmun, J., dissenting). "Moreover, the class must exist independently of the defendants' actions; that is, it cannot be defined simply as the group of victims of the tortious action." *Id.*

Hunter does not allege that she is part of a class as contemplated by § 1985(3). None of the facts in her Complaint or proposed additional facts indicate that any of the actions she complains of were motivated by class-based animus. On the contrary, she asserts that the many individuals and organizations in her alleged conspiracy have acted against her personally and against her business. Even assuming that every allegation Hunter has alleged is true, the Supreme Court has explicitly declined to "construe § 1985(3) to reach conspiracies motivated by economic or commercial animus." *United Bhd. of Carpenters*, 463 U.S. at 838. With no implication of class-based animus in her facts, Hunter does not and cannot state a claim under § 1985(3).

> 3. *42 U.S.C. § 1986*

Hunter's last civil rights count alleges that Holsinger knew of a conspiracy in violation of § 1985, was in a position to prevent or aid in preventing the conspiracy, and failed to act. *See* 42 U.S.C. § 1986. Fundamentally, "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985." *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985). With no actionable conspiracy, there can be no failure to intercede. The absence of a valid claim

24

under § 1985 is fatal to a claim under § 1986. *See Patterson v. McCormick*, No. 2:13cv293, 2014 WL 2039966, at *9 (E.D. Va. May 15, 2014).

F.    *Fraud*

Count XII alleges common law fraud against Holsinger and Robertson. "To prevail on an actual fraud claim under Virginia law, a plaintiff must prove by clear and convincing evidence '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" *Murr v. Capital One Bank (USA), N.A.*, 28 F. Supp. 3d 575, 584 (E.D. Va. 2014) (quoting *Evaluation Res. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)).

Hunter's fraud allegations discuss many statements made by Holsinger and Robertson to each other and to third parties. *See* ECF No. 38, at 32–33; ECF No. 60, at 13–14. Fundamentally, however, a fraud claim requires that "the party asserting the claim be the party to whom false representations were made." *Unlimited Screw Products, Inv. v. Malm*, 781 F. Supp. 1121 (E.D. Va. 1991) (citing *Jefferson Standard Life Ins. Co. v. Hedrick*, 27 S.E.3d 198, 202 (Va. 1943)). The Complaint and proposed amended facts do not allege a false representation made by Holsinger to Hunter, or any reliance upon such a statement by Hunter to her detriment. In fact, the pleadings do not contain any direct communication between Holsinger and Hunter.

The Complaint also does not plead a false representation made by Robertson to Hunter, but the proposed amended facts allege the claim with greater detail. ECF No. 38, at 32–33. Hunter quotes an "electronic agreement" between herself and Robertson wherein Robertson agreed that "[a]ny and all information which has been or will be provided by [Robertson] is and shall be true and correct," and that she would "pay any associated non-premium fees that are contained in [Robertson's] instance online insurance quote when such fees are allowed by law."

25

*Id.* Hunter asserts that she relied upon these statements in her decision to engage in business with Robertson, but that Robertson's later actions demonstrate that she never intended to abide by these statements.

Hunter's pleadings do not support her argument. For Robertson to knowingly make a false statement with the intent to mislead she must have intended not to follow her representations at the time she made them. To the contrary, all the facts presented in this case indicate that Robertson honestly desired insurance coverage for her dog and abided by her agreement with Hunter until she discovered that Hunter was not licensed in Virginia and the policy she helped Robertson procure would not fulfill her needs. Nothing indicates that Robertson's representations were false at the time she made them. While a court should construe all facts in the plaintiff's favor when considering a motion to dismiss, it should accept "neither legal conclusions drawn from the facts nor unwarranted inferences, unreasonable conclusions, or arguments." *Luther v. Wells Fargo Bank, N.A.*, No. 4:13cv72, 2014 WL 6451667, at *2 (W.D. Va. Nov. 17, 2014) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 189 (4th Cir. 2000)). It would be unreasonable for the Court to conclude, based on Hunter's allegations, that Robertson's statements were false when she made them. Hunter consequently cannot state a claim for fraud. Count XII of the Complaint should be dismissed with prejudice and any proposed amendment of facts related to it denied.

G. *Tortious Interference*

Count XIII alleges tortious interference with a business expectancy against Holsinger and Robertson.[14] To state a claim, Hunter must plead: "(1) the existence of a valid contractual

---

[14] In one of her reply briefs in support of her motion to amend, Hunter objects to Robertson's "conversion" of her claim for "tortious interference," Compl. ¶ 79, into a claim for tortious interference with a business expectancy. ECF No. 60, at 15. She argues that her complaint "sets

relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 318 (Va. 2014).

The agreement between Robertson and Hunter for the procurement of an insurance policy could form a basis for a claim only against Holsinger, as a party cannot interfere with her own contract. *Atta v. Nelson*, No. 7:11cv463, 2012 WL 178355, at *4 (W.D. Va. Jan. 23, 2012) (citing *Fox v. Deese*, 362 S.E.2d 699 (Va. 1987)). Hunter has not attached a copy of a contract between her and Robertson, and the precise nature of the alleged contractual and business relationship is not clear from the pleadings. Hunter states that she is "an insurance agent who helps consumers obtain liability insurance for their dogs." ECF No. 39, at 5. Robertson "entered into a contractual agreement electronically with Hunter," ECF No. 38, at 32, pursuant to which Hunter helped Robertson obtain insurance, Compl. ¶¶ 2, 25, and charged her credit card $100, ECF No. 39, at 25, 32. Hunter states that she was not part of the resulting contract between Robertson and the insurance company. *Id.* at 2. After Holsinger informed Robertson that Hunter was not licensed in Virginia and her policy did not satisfy the statute, Robertson demanded a refund, ordered Hunter to charge no future installment payments, and canceled the credit card associated with her policy. Compl. ¶ 4. It is not clear what the terms of Robertson and Hunter's contract were, whether the contractual relationship ended with the provision of insurance, or

---

forth 'tortious interference' which can be liberally construed," and Robertson is therefore adding unnecessary elements. *Id.* As with her RICO allegations, Hunter requests the Court to liberally construe the law rather than her pleadings. There is no cause of action in Virginia for tortious interference except for that which relates to a business expectancy. The Court cannot find otherwise, regardless of Hunter's *pro se* status.

what ongoing business relationship they had related to installment payments. It is therefore not possible to analyze the nature of the contract or business expectancy, the circumstances of its breach, or the resulting damages. The Complaint fails to state a claim for tortious interference with Robertson's contract on this basis alone.

Furthermore, Hunter's claim suffers a more fundamental flaw. The proposed amended facts state plainly that the VBI revoked Hunter's insurance license before she interacted with Robertson. ECF No. 39, at 21. Hunter alleges many defects with the VBI's procedure and concludes that these render the decision void. *Id.* Though she has lodged these objections in an appeal to the Virginia Supreme Court, the Court has yet to act on her petition. *Id.* at 21–22. Despite Hunter's opinion to the contrary, an administrative (or judicial) decision that has not been formally overturned has full legal effect. Therefore, she was not a licensed insurance agent when she allegedly contracted with Robertson. Virginia law is clear that one cannot sell, solicit, or negotiate contracts of insurance without an agent license. Va. Code Ann. § 38.2-1822 (West); *Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 673 (E.D. Va. 2005) ("[T]o transact insurance in Virginia, Devnew must obtain an insurance agent license pursuant to the requirements in § 38.2–1817 [and] to maintain that license, he must comply with Virginia's insurance laws. § 38.2–1831(2)."); *Cosby v. Com. ex rel. State Corp. Comm'n*, 450 S.E.2d 121, 123 (Va. 1994) (upholding State Corporation Commission's finding that an unlicensed woman soliciting and negotiating insurance on behalf of an agent violated Va. Code § 38.2-1822).

Tortious interference requires a *valid* contract and a contract that is itself illegal cannot form the basis of a interference claim. *Am. Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851, 864 (E.D. Va. 1999). Put another way, a plaintiff has no expectation in a contract that is unenforceable. Under Virginia Law, if a party to a contract makes a "false representation of a

28

material fact, constituting an inducement to the contract, on which the [other] had a right to rely," she commits fraud in the inducement. *Abi-Najm v. Concord Condominium, LLC*, 699 S.E.2d 483, 489 (Va. 2010); *see also In re Myrtle*, 500 B.R. 441, 450 (Bankr. W.D. Va. 2013). Fraud in the inducement is grounds for rescission, rendering the entire contract voidable and unenforceable. *Devine v. Buki*, 767 S.E.2d 459, 466 (Va. 2015); *Abi-Najm*, 699 S.E.2d at 489. Hunter contracted with Robertson to procure insurance and held herself out as an insurance agent without telling her that the VBI had revoked her Virginia license. That misrepresentation goes to the heart of their business relationship. Any contract made under those circumstances is unenforceable because of fraud in the inducement and could not form the basis of a tortious interference claim.[15]

As an additional lost business expectancy, Hunter pleads that the insurance company that issued the policy she helped Robertson obtain has since "ceased to offer this same insurance in Virginia and in all other states in which it does business only because Robertson and Holsinger joined together to attack Hunter's honest services." ECF No. 60, at 16; *see also* ECF No. 41. Hunter alleges that the Defendants' actions tortiously interfered with her ability to assist future dog owners to procure this insurance.

Courts require business expectancies to be more certain than what Hunter alleges here. "A contract expectancy is a contract that is expected to come into force in the future," *GTSI Corp. v. Wildflower Int'l, Inc.*, No. 1:09cv123, 2009 WL 2160451, at *8 (E.D. Va. July 17, 2009), and "[m]ere proof of a plaintiff's belief or hope that a business relationship will continue

---

[15] While addressing the tortious interference claim, Hunter states that "Robertson breached her contract with Hunter when she disputed her credit card transaction with Hunter on fraudulent grounds." ECF No. 60, at 17. Hunter does not actually bring a breach of contract claim, and the Court need not infer one. Hunter's failure to disclose that she was not licensed in Virginia would be grounds for fraudulent inducement, and, as Hunter alleged, Robertson clearly terminated any agreement between them.

29

is inadequate to sustain the cause of action," *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 896 (Va. 1997). Hunter's general assertion that she would have continued selling the insurance policy in the future lacks the specificity required to state a business expectancy. Furthermore, the revocation of Hunter's license forecloses any reasonable expectation she could have of continuing to sell insurance in Virginia.

Neither the Complaint nor the proposed amended facts present a valid contract or business expectancy upon which Hunter can base a claim for tortious interference. Considering that Hunter did not have a license to sell insurance in Virginia during the relevant time, she could not present additional facts related to this incident that would cure this defect. Count XIII should be dismissed with prejudice and any amendment of the facts related to it denied.

E.      *Conspiracy*

Count XIV alleges that the Defendants have conspired against Hunter.[16] Virginia recognizes two versions of civil conspiracy—common law conspiracy and statutory conspiracy under Virginia Code §§ 18.2-499 and 18.2-500. Common law conspiracy requires "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing *Glass v. Glass*, 321 S.E.2d 69 (Va. 1984)). Section 18.2-499 imposes criminal liability on conspiracies to injure another in her business, while § 18.2-500 allows a civil cause of action and recovery of treble damages for a

_____

[16] The Complaint does not specify whether Hunter is bringing a common law or statutory conspiracy claim. *See* Compl. ¶ 83. Hunter's proposed amendment provides a very brief argument in support of statutory conspiracy, but does so in a section titled "Count XIV – Common Law Conspiracy and Statutory Conspiracy . . . ." *See* ECF No. 38, at 33–34; ECF No. 39, at 35–36. In the interest of deciding any potentially valid claim on the merits, *Rankin*, 2015 WL 412850, at *1, the Court will consider both forms.

violation of § 18.2-499. "To recover in an action under these statutes, a plaintiff must establish: (1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff." *Dunlap*, 754 S.E.2d at 317.

The two types of conspiracy have common requirements. "Because there can be no conspiracy to do an act that the law allows," the Virginia Supreme Court has held that either type of conspiracy "must at least allege an unlawful act or an unlawful purpose to survive demurrer." *Id.* (citations omitted) (collecting cases). "Thus, where 'there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong.'" *Firestone*, 485 F. Supp. 2d at 703 (quoting *Citizens for Fauquier Cty. v. SPR Corp.*, 37 Va. Cir. 44, 50 (1995)). Additionally, "[u]nder either theory of recovery, the plaintiff must first allege that the defendants combined together to effect a 'preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy.'" *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (quoting *Bull v. Logetronics, Inc.*, 232 F. Supp. 115, 131 (E.D. Va. 1971)). Conspiracy must also be pled with particularity, and "in order to survive a motion to dismiss, [Hunter] must at least plead the requisite concert of action and unity of purpose in more than 'mere conclusory language.'" *Id.* (quoting *Lewis v. Gupta,* 54 F.Supp.2d 611, 618 (E.D. Va. 1999)).

Hunter's proposed amended facts contain many allegations of conspiracy that have no direct connection to the Defendants. *See* ECF No. 39, at 5–24 (spending 19 pages to describe six years of legal conflict before finally mentioning the Defendants and the facts underlying this dispute). Holsinger alleges three conspiracies specifically against the Defendants. First, she alleges that Holsinger and Robertson conspired to injure Hunter in her business. ECF No. 39, at 29–30. Second, "Holsinger conspired with Ayers and William Stanton to restrict, restrain, and

impede interstate commerce in the insurance industry" by "restrict[ing] the insurance options for dog owners to just two providers in the entire United States of America." ECF No. 39, at 27–28; *see also* ECF No. 60, at 20. Third, "Robertson conspired with, among others, Bill of the [VBI] . . . to impede interstate commerce and to unlawfully regulate insurance." ECF No. 60, at 19.

In support of her conspiracy allegations, Hunter presents the following facts and events. Ayers told Holsinger in an email that Stanton had said Hunter was not a licensed insurance agent in Virginia. ECF No. 39, at 24. Ayers also said ""you might let [Robertson] know that we approved insurance from PRIME (on-line) and Farmers Insurance." *Id.* at 27. Holsinger informed Robertson that Hunter was not licensed in Virginia and that her policy did not satisfy the statute. *Id.* at 28. Robertson sent emails to Hunter expressing her anger and took remedial action, including canceling the card set up for installment payments, demanding a refund, and reporting Hunter to the VBI. *Id.* at 28–29. Robertson also sent Hunter a copy of what appeared to be a case summary of the VBI's action and forwarded the emails between herself and Hunter to Holsinger. *Id.* at 32. After Hunter filed suit against the Defendants, Robertson sent Holsinger another email requesting to discuss the suit and promising to forward any additional emails between herself and Hunter. *Id.*

These facts fail to allege either the unlawful purpose or concerted action necessary to sustain a conspiracy claim. As this opinion has discussed, the acts Hunter complains of do not state a cause of action under the law and none of Hunter's other Counts can provide the unlawful act upon which to base her fraud claim. There is no dispute that the VBI revoked Hunter's Virginia insurance license. None of Hunter's allegations of invalidity change the legal effect of that revocation. Neither are any statements made by the Defendants about Hunter's licensure or actions taken by them in response to it rendered unlawful because Hunter disagrees with the

32

revocation decision and informed Robertson that it was fraudulent. In notifying others that the VBI had revoked Hunter's license and then taking steps to rectify Hunter's improper procurement of insurance for Robertson, the Defendants and other alleged conspirators did nothing unlawful. Even if the Defendants' actions were malicious and resulted in injury to Plaintiff—which the Court does not find—that would not render them unlawful. *R & D 2001, LLC v. Collins*, No. CL-2005-7021, 2006 WL 2578503, at *4 (Va. Cir. Ct. July 12, 2006) ("In Virginia, there can be no conspiracy to do that which is lawful, even if it [is] done maliciously and operates to injure another person or property.").

Additionally, the Defendants' actions align with their own individual duty and self interest and do not support an inference of concerted action. Holsinger's communication with Ayers and, indirectly, Stanton involved Hunter's licensure and the procurement of insurance policies that reflect the requirements of Virginia Code § 3.2-6540(F). Though Hunter characterizes Ayers's email concerning Prime and Farmer's policies as *prima facie* evidence of a conspiracy to restrict insurance options, the email suggests the companies as examples of policies that are known to satisfy the statute, not as an exclusive list. These interactions are a necessary and ordinary part of workplace communication in law enforcement. Holsinger relayed this information to Robertson as part of her duty to uphold the law, foster compliance, and serve the public. Robertson, finding that she had paid for a policy that did not work as promised, took steps to avoid further loss, recoup her money, and report Hunter's improper conduct. All of these actions are reasonable under the facts alleged and none of them indicate a common "preconceived plan or unity of design and purpose" between the Defendants, Ayers, or Stanton.

Count XI should be dismissed with prejudice and any proposed amendment related to it denied as futile.

33

*F.     Declaratory Judgment*

Hunter's Complaint broadly requests "a conclusive declaratory judgment clarifying the legal relations of the parties." Compl. ¶ 13. Her proposed amended complaint expands upon this request by listing four specific questions for declaratory relief. ECF No. 39, at 2. "[A] federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essential elements are met: (1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004). Neither Hunter's Complaint nor proposed amended complaint states a substantive claim upon which relief can be granted. There is thus no actual controversy between the parties or independent jurisdiction upon which to base declaratory judgment. Hunter's request should be denied with prejudice.

## IV. Conclusion

Neither Hunter's Complaint nor proposed amended complaint states a claim for which the Court can grant relief. I therefore recommend that the presiding District Judge **GRANT** Robertson's motion to dismiss, ECF No. 16, **GRANT** Holsinger's motion to dismiss, ECF No. 24, and **DENY** Hunter's motions to amend her complaint, ECF Nos. 38, 39, 40, 41, and **DISMISS WITH PREJUDICE** Hunter's Complaint, ECF No. 2.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and unrepresented parties.


ENTER: February 19, 2016

Joel C. Hoppe
United States Magistrate Judge